UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORIA A. MCCLINTOCK, | ) Case No. CV 10-4239-PJW |
| Plaintiff, | ) |
| | ) MEMORANDUM OPINION AND ORDER |
| v. | ) |
| MICHAEL J. ASTRUE, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) ) ) |
| Defendant. | ) ) |

## I.  INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying her application for Supplemental Security Income ("SSI"). She claims that the Administrative Law Judge ("ALJ") erred when he: (1) found that she was not credible; (2) rejected the treating doctors' opinions; (3) found that her mental impairments were not severe; and (4) determined her residual functional capacity. For the reasons discussed below, the Court finds that the ALJ did not err and affirms the Agency's decision denying benefits.

## II. SUMMARY OF PROCEEDINGS

This case has been bouncing around for more than a decade. In 2000, Plaintiff applied for SSI after injuring her back in a car crash. (Administrative Record ("AR") 13, 103-05.) Her application was denied initially and on reconsideration, after which she requested and was granted a hearing before an ALJ. (AR 74, 82, 98, 100.) Following a hearing in January 2002, the ALJ issued a decision, finding that Plaintiff was not disabled. (AR 11-16, 473-518.) She appealed to the Appeals Council, which denied review. (AR 519-20.) Plaintiff then filed an action in this court and, in 2003, the parties stipulated to a remand for further proceedings. (AR 522-25.)

On remand, the ALJ held another hearing and, in December 2004, again denied the application. (AR 326-338, 369-452.) Plaintiff appealed to this court and, in September 2005, the parties, again, stipulated to a remand. (AR 641-46.)

On remand, a new ALJ held a third hearing and, in 2008, denied Plaintiff's application. (AR 598-612, 852-890.) Plaintiff requested review of the ALJ's decision. (AR 591.) More than two years later, in March 2010, the Appeals Council denied review. (AR 586-88.) In June 2010, Plaintiff appealed to this court. Between June 2010 and February 2012, the parties were apparently attempting to resolve the case, to no avail. In February 2012, the parties filed a Joint Stipulation and the case is now ready for decision.

## III. ANALYSIS

A. <u>The ALJ's Credibility Finding</u>

The ALJ determined that Plaintiff was not credible. Plaintiff contends that he erred in doing so. For the following reasons, the Court concludes that the ALJ did not err.

ALJs are tasked with judging the credibility of the witnesses. Where a claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce the alleged symptoms and there is no evidence of malingering, an ALJ can only reject the claimant's testimony for specific, clear, and convincing reasons. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996). In making a credibility determination, the ALJ may take into account ordinary credibility evaluation techniques. *Id.* at 1284.

The ALJ cited several reasons for questioning Plaintiff's credibility. (AR 603-04, 610.) He noted that Plaintiff testified that she had been exempted from work requirements by Cal Works because she was disabled but that the documentation from Cal Works stated that her exemption was based on the fact that she was caring for her then-20-year-old disabled son.[1] (AR 399, 603.) As the ALJ pointed out, at the same time, Plaintiff claimed to the Agency that her 22-year-old daughter was providing care for her son because Plaintiff was unable to do so. (AR 397, 603.) Thus, Plaintiff was obviously misrepresenting who was doing what before Cal Works or the Agency in an effort to manipulate the process and receive payments from both.

---

[1] Arguably, there is some confusion as to what Plaintiff was saying when she testified about her exemption from Cal Works. (AR 399, 449, 451.) But the ALJ's interpretation of what Plaintiff meant when she testified is not unreasonable and the Court will accept that interpretation. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

This is a valid reason for questioning Plaintiff's testimony, *see Smolen*, 80 F.3d at 1284, and is supported by the record.[2]

The ALJ also questioned Plaintiff's testimony because it was contradicted by her activities. (AR 604.) For example, she presented herself as someone who was so wracked with pain that she was unable to function. (AR 388-407.) She explained that she was so limited that she could not even drive her son to school anymore and relied on her daughter to drive. (AR 397, 402.) Yet, she admitted that she had driven 45 minutes to the administrative hearing with her daughter in the car and had no credible explanation as to why her daughter had not driven or why Plaintiff was suddenly able to perform such a task despite her alleged inability to do so. (AR 402.) Again, this is a valid reason for questioning Plaintiff's veracity and it is supported by the record.

The ALJ also relied on the fact that the objective medical evidence did not support the extent of Plaintiff's claimed limitations. The MRIs and the CT scans did not reveal any reason for Plaintiff to be as debilitated as she claimed. (AR 170 (noting normal

---

[2] In the context of this case it seems obvious that Plaintiff's efforts to convince the ALJ in 2004 that she was not taking care of her son were in response to the ALJ's previous finding that her ability to do so undermined her testimony that she was incapacitated. In 2002, she testified that she spent her time taking care of her disabled son, which required her to, among other things, drive him (and his brother) to doctors' appointments daily. (AR 491-92.) In the ALJ's 2002 decision, she found that Plaintiff's testimony that she was too incapacitated to work was not believable because, among other things, she was able to care for her son and drive him to the doctor every day. (AR 458-59.) Plaintiff was evidently conscious of this finding when she testified at the second hearing in 2004 in front of the same ALJ that she did not take care of her son anymore. (AR 397.) It appears, however, that, at the time, she was being paid by Cal Works to do so. (399-400.)

1  CT scan from January 2000), 172.)  And, contrary to the medical
2  evidence, Plaintiff claimed at the administrative hearing in 2004,
3  five years after the accident that caused her injuries, that her
4  condition had "dramatically changed" for the worse (AR 388-89), yet
5  there was nothing in the medical record to support such a claim.  The
6  ALJ's reliance on this reason to reject Plaintiff's credibility was
7  valid.  *See Carmickle v. Comm'r, Soc. Sec.,* 533 F.3d 1155, 1161 (9th
8  Cir. 2008) ("Contradiction with the medical record is a sufficient
9  basis for rejecting the claimant's subjective testimony.").
10     In the end, the Court finds that the ALJ set forth specific,
11 clear, and convincing reasons for questioning Plaintiff's credibility.
12 For that reason, the credibility determination will not be disturbed.
13 B.   <u>The Treating Doctors' Opinions</u>
14     The ALJ rejected the opinions of Plaintiff's treating doctors,
15 Dr. Booker and Dr. Brubaker, that Plaintiff was, in essence, incapable
16 of working due to her impairments and the pain and limitations that
17 they caused her.  He accepted, instead, the opinions of the examining
18 and reviewing doctors.  Plaintiff contends that the ALJ erred in doing
19 so.  For the following reasons, the Court disagrees.
20     Generally speaking, a treating physician's opinion is entitled to
21 deference.  *Orn v. Astrue,* 495 F.3d 625, 631 (9th Cir. 2007); *see also*
22 *Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999) (explaining
23 treating physician's opinion "is given deference because 'he is
24 employed to cure and has a greater opportunity to know and observe the
25 patient as an individual.'") (quoting *Sprague v. Bowen*, 812 F.2d 1226,
26 1230 (9th Cir. 1987)).  Thus, all things being equal, a treating
27 doctor's opinion regarding a claimant's capacity to work should be
28 given controlling weight.  *Orn*, 495 F.3d at 631; *Embrey v. Bowen*, 849

F.2d 418, 421 (9th Cir. 1988).  That being said, however, an ALJ is not required to simply accept a treating doctor's opinion.  Where, as here, the opinion is contradicted by another doctor's opinion, the ALJ is empowered to reject it for specific and legitimate reasons supported by substantial evidence in the record.  *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (quoting *Magallanes v. Bowen* 881 F.2d 747, 751 (9th Cir. 1989)); *Morgan*, 169 F.3d at 600.

Plaintiff's back pain stemmed from a car accident that she was involved in in 1999.  (AR 163-67, 485-87.)  She was not taken to the hospital after the accident but within days she began experiencing pain.  She was treated thereafter by her family doctor, Dr. Booker and, sporadically thereafter, by Dr. Brubaker.  (AR 163-64, 829-51.)  Her treatment consisted primarily of physical therapy, pain medication, and injections in her back.  (AR 189-233, 256-76, 288-322, 727-851.)

In a brief note on a prescription pad sheet in April 2000, Dr. Booker opined that Plaintiff might be able to perform a sedentary job if she did not have to lift more than five pounds and did not have to bend or stoop.  (AR 259.)  He later changed his mind it appears and, in August and September 2000, wrote that she was not released for work.  (AR 257-58.)  In 2004, in another brief note on a prescription sheet, he wrote that Plaintiff was disabled due to anxiety, depression, chronic neck and back pain, and constipation.  (AR 570.)

The ALJ rejected Dr. Booker's opinion because there was "very little objective support" for it and because it was inconsistent with the objective radiological evidence that revealed that Plaintiff did not have any significant abnormalities.  (AR 606.)  The ALJ also noted that it was contradicted by the other doctors' opinions, except for

6

1  Dr. Brubaker's, and that these other doctors were specialists and
2  their reports were more detailed.  (AR 606.)
3       These are valid reasons for questioning a doctor's opinion and
4  are supported by the record.  The radiological evidence showed little
5  if any abnormality in Plaintiff's back.  An IC scan in October 1999
6  revealed "no radiographic abnormality" in the thoracic spine (though
7  it did show mild chronic degenerative disease at the C7-T1).  (AR
8  172.)  A CT scan in January 2000 was normal.  (AR 170.)  An MRI in
9  June 2000 found only a minimal disc bulge at C5/6 and no herniation.
10 (AR 244.)  The specialists who examined Plaintiff and/or reviewed the
11 medical records all agreed that she was not as incapacitated as she
12 claimed and was capable of working.  For example, following his exam
13 of Plaintiff in November 1999, Dr. De La Cerna, an internist, opined
14 that she could return to work the following month.  (AR 151-52.)
15      An ALJ is entitled to rely more heavily on a specialist's opinion
16 than a treating doctor's opinion where, as here, the treating doctor
17 is not a specialist.  *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.2
18 (9th Cir. 2001) (explaining treating doctor's opinion may be entitled
19 to little or no weight if it relates to a subject area not related to
20 his expertise); *Smolen,* 80 F.3d at 1285 (noting opinions of
21 specialists are entitled to more weight than general practitioners).
22 An ALJ is also entitled to discount a treating doctor's opinion that
23 is not supported by the objective evidence.  *See Batson v. Comm'r*, 359
24 F.3d 1190, 1195 (9th Cir. 2004).  Finally, an ALJ may legitimately
25 reject a doctor's opinion that is conclusory and without explanation.
26      The ALJ rejected Dr. Booker's opinion for all of these reasons.
27 And they are specific and legitimate reasons for doing so.  As such,
28 the ALJ's decision to discount Dr. Booker's opinion will be affirmed.

The Court arrives at a similar finding with regard to Dr. Brubaker. The ALJ rejected Dr. Brubaker's opinion because his findings were unsupported by the objective medical evidence in the record and inconsistent with the opinions of the examining doctors, who were specialists. (AR 609.) In the ALJ's view, Dr. Brubaker's opinion amounted to nothing more than summary statements, which were not only unsupported by the record but were in fact contradicted by it. (AR 609-11.)

Clearly, Dr. Brubaker's findings regarding Plaintiff's condition following her accident in 1999 are not supported by the objective medical evidence, e.g., the CT scans and MRIs, all of which revealed no abnormalities in Plaintiff's back or spine. And, though Plaintiff was also involved in another accident in March 2006 for which she went to see Dr. Brubaker, there are no objective tests that show that any injuries she suffered in this accident were debilitating. (AR 836-38.) Rather, a fair reading of Dr. Brubaker's records reveal that he periodically treated Plaintiff for the pain that she reported to him and nothing in Dr. Brubaker's medical charts or the other medical evidence in the record supports the extent of the limitations he proposed. For that reason, the ALJ did not err in rejecting Dr. Brubaker's opinion, either.

C.   Plaintiff's Mental Condition

Plaintiff claimed that she suffered from anxiety and depression. Her treating doctors prescribed drugs to treat these conditions. Still, the ALJ found that Plaintiff did not have a severe mental impairment. (AR 600-02.) Plaintiff argues that the ALJ erred. For the following reasons, the Court finds that the ALJ did not err.

At step two, the ALJ is tasked with identifying a claimant's "severe impairments." 20 C.F.R. § 416.920(a)(4)(ii). Severe impairments are impairments that significantly limit an individual's physical or mental ability to do basic work activities. *Smolen*, 80 F.3d at 1290; 20 C.F.R. § 416.921(a). In addition, to meet the test at step two, the impairment must last for at least 12 months. 20 C.F.R. §§ 416.909, 416.920(a)(4)(ii). An impairment is *not* severe "if it is merely a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do work activities." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling No. 96-3p). The step-two inquiry is intended to be a "de minimis screening device." *Smolen*, 80 F.3d at 1290 (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)).

The ALJ concluded that Plaintiff's anxiety and depression were not severe impairments because they were transient and associated with events in Plaintiff's life that would naturally cause acute distress for short periods of time. (AR 601.) The record supports this finding. The medical records establish that Plaintiff reported psychiatric problems when she experienced turmoil in her life, for instance, when her mother's murder investigation became active, when her son was diagnosed with colitis, when her boyfriend broke up with her, and when a friend committed suicide. (AR 318, 558.)

The ALJ also pointed to the fact that Plaintiff never sought the services of a psychiatrist or psychologist and that Drs. Booker and Brubaker never referred her to one. (AR 601.) The only counseling she received was from a social worker in December 2002 and January 2003. (AR 582.) It is unclear what the counseling was for or how extensive it was because the only record regarding it is a one-

sentence letter from the clinic verifying that Plaintiff had undergone counseling. (AR 582.) Thus, as the ALJ noted, her only real treatment was occasional prescriptions from her treating doctors, who were family doctors, not psychiatrists. (AR 601.)

The ALJ also pointed out that the only specialists who offered opinions in this case, two reviewing psychiatrists, found that Plaintiff's mental impairments were not severe. (AR 246, 284.) This, too, is a valid reason for rejecting the treating doctors' opinions that Plaintiff's impairments were severe. *Smolen,* 80 F.3d at 1285 (noting opinions of specialists are entitled to more weight than those of general practitioners).

Plaintiff argues that the ALJ had a duty to develop the case and obtain evidence of her mental impairments and failed to do so. (Joint Stip. at 12.) That duty, however, is triggered only when the evidence is ambiguous or when the ALJ finds that the record is inadequate to evaluate the evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). That was not the case here. Moreover, it was Plaintiff's duty to prove that she was disabled. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) (citing 42 U.S.C. § 423(d)(5)). And, in this case that now spans 12 years, she has never presented any evidence to substantiate her claim that she was severely impaired due to anxiety or depression. This, despite the fact that, when she appeared for the administrative hearing in 2008, an ALJ had previously concluded in 2002 and 2004 that her mental impairments were not severe. (AR 332, 457.) Nor does Plaintiff describe for the Court what records exist that would support her claim that her impairment is severe or explain why she has not produced them. As such, this argument is rejected.

In the end, the Court agrees with the ALJ that Plaintiff did not produce sufficient evidence to establish that she had a mental impairment that was severe and that lasted for more than twelve months.  The only evidence in the record supporting such a claim were Plaintiff's statements to her doctors and to the Agency, which were not to be believed.  At a minimum, Plaintiff was exaggerating her condition throughout these proceedings.  For all these reasons, the ALJ's findings that Plaintiff did not have a severe mental or emotional impairment is affirmed.

D.   The Residual Functional Capacity Finding

Plaintiff complains that the ALJ failed to properly take into account all of her severe and non-severe impairments when he determined her residual functional capacity.  (Joint Stip. at 14-16.)  She points out, for example, that he did not factor in the impact of her migraine headaches or her anxiety and depression in analyzing her ability to work.  There is no merit to this claim.

The ALJ was only required to include in the residual functional capacity finding those impairments which he found were supported by the evidence.  *Magallanes*, 881 F.2d at 756-57.  The ALJ noted that Plaintiff had complained of headaches, (AR 603), but found that she was not credible.  (AR 604.)  Thus, he was not required to include headaches in the residual functional capacity finding.  *Magallanes*, 881 F.2d at 756-57.  The ALJ also discussed Plaintiff's anxiety and depression but concluded that they were not severe impairments.  (AR 601-02.)  Thus, they did not have to be included in the residual functional capacity assessment, either.  For these reasons, this argument is rejected.

## IV. CONCLUSION

For the reasons set forth above, the Agency's decision is affirmed and the case is dismissed with prejudice.

IT IS SO ORDERED.

DATED: July  24 , 2012.

*Patrick J. Walsh*
_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\MCCLINTOCK, D 4239\memorandum opinion and order.wpd